# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
\* \* \*

| | |
|---|---|
| SCOTT H. BEDARD,<br><br>              Plaintiff,<br><br>  v.<br><br>NEVADA DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>              Defendants. | Case No. 3:18-CV-0218-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 35] |

This case involves a civil rights action filed by Plaintiff Scott Bedard ("Bedard") against Defendants Kim Adamson ("Adamson"), Ted Hanf ("Hanf"), and Romeo Aranas ("Aranas") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF No. 35.)[2] Bedard opposed the motion, (ECF No. 41), and Defendants replied. (ECF No. 43.) For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 35), be granted.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Bedard is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently incarcerated at the Lovelock Correctional Center ("LCC"). (ECF No. 5.) Defendants were all employed with the NDOC at the time relevant to the complaint. (ECF Nos. 102, 104.) On May 10, 2018, Bedard filed his complaint pursuant to 42 U.S.C. § 1983, alleging an Eighth Amendment claim for deliberate indifference to serious medical needs relating to an alleged delay in treatment of his Hepatitis-C ("Hep-C"), and a First Amendment claim for retaliation and the Nevada Constitutional equivalent, Article I, § 9 of the Nevada Constitution. (ECF No. 1-1.) The complaint was screened

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    ECF No. 37 consists of Bedard's medical records filed under seal.

pursuant to 28 U.S.C. § 1915A and Bedard was permitted to proceed on his deliberate indifference and retaliation claims against Defendants Adamson, Hanf, and Aranas. (ECF No. 4.)

Bedard alleges in his complaint that he has Hep-C, and in November 2017, Defendants failed to treat Bedard's Hep-C due to medical costs and because Bedard had filed grievances. (ECF No. 5 at 3-4.) As soon as Bedard began filing grievances, Defendants "began [an] illicit campaign to befuddle [Bedard's] ill effects of non-treatment toward [Bedard's] hep C of long-term liver damage." (*Id.* at 4.) Long term liver damage could lead to death, liver scarring, liver failure, fluid accumulation in legs and abdomen, life threatening infections, possible organ failure, muscle fatigue, and nausea. (*Id.*) Defendants state that Bedard's "viral loads" do not meet the standard for Harvoni even when that is a known falsehood. (*Id.*) In order to save on medical costs, Defendants tell Bedard that he will only get the cure when he is on his death bed. (*Id.*) Defendants will only offer Bedard a "placebo" Interferon. (*Id.*) Bedard has muscle fatigue, fluid retention, nausea, excessive viral loads, and liver scarring. (*Id.*)

On December 15, 2021, Defendants filed the instant motion for summary judgment arguing, (1) Defendants were not deliberately indifferent to Bedard's serious medical needs, (2) Bedard was not harmed by any alleged delay in treatment, (3) Defendant Aranas was not Bedard's treating physician and thus did not personally participant in any alleged constitutional violation, (4) Bedard cannot prevail on his First Amendment or Nevada Constitution retaliation claim, and (5) all Defendants are entitled to qualified immunity. (ECF No. 35.)

## II.  LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477

U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the non-moving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz*

*Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the non-moving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the non-moving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the non-moving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986). The non-moving party must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the non-moving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the non-moving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his contentions in motions and pleadings may be considered as evidence to meet his burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a non-moving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## III. DISCUSSION

### A. Eighth Amendment – Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or

treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care…." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

### 1. Analysis

Starting with the objective element, the parties agree that Bedard's Hep-C constitutes a "serious medical need." However, Defendants argue summary judgment should be granted because Bedard cannot establish the second, subjective element of his claim. Specifically, Defendants argue they were not deliberately indifferent to Bedard's condition. Under the subjective element, there must be some evidence to create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to Bedard's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, this requires Bedard to "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, Defendants submitted authenticated evidence regarding the medical treatment Bedard received related to his Hep-C. (*See* ECF Nos. 37-1, 37-2, 37-3, 37-4, 37-5, 37-6 (sealed).) Bedard was first enrolled in the Chronic Disease Clinic in 2012. (ECF Nos. 35 at 3, 37-1 (sealed).) Bedard received routine care through the Chronic Disease Clinic for his Hep-C. (ECF No. 37-1 (sealed).) Bedard filed medical kites requesting treatment for his Hep-C in June 2016. (ECF No. 35-1.) Lab work performed in November 2016 showed Bedard's APRI score was 0.934, which did not qualify him for treatment at that time. (ECF Nos. 37-2 (sealed); 35-2 at 14, 16.)

On November 25, 2017, Bedard filed a grievance claiming he needed treatment for his Hep-C. (ECF No. 35-2 at 6-11.) The response to the informal grievance stated:

> At this time your APRI score does not meet the criteria for the Harvoni treatment. This is according to the DOC Treatment Directive 219. However, for your further information, inmates that have tested positive for Hep-C, and have constitutional signs and symptoms may be candidates for treatment. Your information has been submitted to our committee for evaluation and consideration for possible treatment.

7

1  (*Id.* at 5.) The response to the first level grievance stated:

2  > I have reviewed your medical chart in reference to your grievance complaint and I find that you were responded to appropriately at the Informal level. One of the exclusionary criteria in Medical Directive 219 is an APRI score less than 2.0. Your APRI is well below this criteria and is therefore one of the criteria you did not meet for the treatment of your Hepatitis C at this point.

(*Id.* at 14.) The response to the second level grievance stated:

> Upon review of your Second Level Grievance and prior Informal and First Level responses you have been answered to the best NDOC has to offer at this time. The established criterion for treatment has been given to you. I recommend that you continue to receive lab work every six months to monitor your APRI score.

(*Id.* at 12.)

Bedard was ultimately approved for Epclusa treatment for his Hep-C on October 1, 2019. (ECF No. 37-3 at 3 (sealed).) Prior to starting his treatment, Bedard received an abdominal ultrasound on May 2, 2019. (ECF No. 37-4 (sealed).) The ultrasound showed "no focal abnormality of the liver," and was "unremarkable." (*Id.*) Physician's Orders indicate Bedard began Epclusa treatment on November 15, 2019. (ECF No. 37-3 at 3 (sealed).) A LabCorp report dated October 16, 2021, states "HCV Not Detected" and "HCV Genotype Not indicated." (ECF No. 37-5 (sealed).)

Defendant Aranas, former NDOC Medical Director, filed a declaration in support of the motion for summary judgment, stating that his only involvement or interaction with Bedard was as a grievance responder and Bedard's "medical condition did not warrant Harvoni or Direct Acting Antiviral medication based on the medical directives in place at the time. [Aranas] advised [Bedard] to continue monitoring his condition and have testing every 6 months." (ECF No. 35-6.)

Defendant Hanf, a Doctor of Osteopathic Medicine and medical provider currently contracted by the NDOC, filed a declaration in support of the motion for summary judgment stating that he "did not deny medical care or pain medication to Mr. Bedard. [Hanf] reviewed [Bedard's] testing and determined that his condition did not qualify him for Harvoni treatment based on his medical condition and the medical directives. [Hanf]

did not prescribe either Harvoni or Direct Acting Antivirals for HCV treatment". (ECF No. 35-7.)

Defendant Adamson, a former NDOC Senior Physician, filed a declaration in support of the motion for summary judgment stating that she "did not deny medical care or pain medication to Mr. Bedard. [Adamson] reviewed [Bedard's] testing and determined that his condition did not qualify him for Harvoni treatment based on his medical condition and the medical directives. [Adamson] did not prescribe either Harvoni or Direct Acting Antivirals for HCV treatment". (ECF No. 35-8.)

Defendants have submitted evidence that establishes they affirmatively monitored and ultimately treated Bedard's HCV and Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Bedard to produce evidence that demonstrates an issue of fact exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

Bedard's opposition does not actually address Defendants' motion but rather asks the Court to deny the motion for summary judgment and allow Bedard to participate in a settlement conference. (ECF No. 41.) Therefore, Bedard has failed to meet his burden on summary judgment to establish that prison officials were deliberately indifferent to his medical needs as he failed to come forward with any evidence to create an issue of fact as to whether Defendants deliberately denied, delayed, or intentionally interfered with the treatment plan. *See Hallett*, 296 F.3d at 744.

Moreover, to the extent that Bedard's assertions in this case are based upon his disagreement with Defendants' choice of treatment, this does not amount to deliberate indifference. *See Toguchi*, 391 F.3d at 1058. In cases where the inmate and prison staff simply disagree about the course of treatment, only where it is medically unacceptable can the plaintiff prevail. *Id.* Therefore, Bedard has failed to show that the NDOC's "chosen course of treatment was medically unacceptable under the circumstances." *Id.* Accordingly, Bedard fails to meet his burden to show an issue of fact that Defendants

were deliberately indifferent to his needs because Bedard has only shown that he disagrees between alternative courses of treatment, such as being given drug intervention treatment as opposed to having his HCV monitored for progression.

Based on the above, the Court recommends that Defendants' motion for summary judgment as to the Eighth Amendment deliberate indifference claim be granted.

### B.     Retaliation – U.S. Constitution and Nevada Constitution

Bedard claims that after he started filing grievances, Defendants started to ignore his need for Hep-C treatment and/or decided not to medically treat him. (ECF No. 5.)

It is well established in the Ninth Circuit that prisoners may seek redress for retaliatory conduct by prison officials under § 1983. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). Article I, § 9 of the Nevada Constitution discusses "liberty of speech and the press." This section provides free speech protections that are coextensive with the First Amendment to the United States Constitution. *S.O.C., Inc. v. Mirage Casino-Hotel*, 23 P.3d 243, 250–51 (Nev. 2001).

A retaliation claim has five elements: (1) a state actor took some adverse action against the inmate, (2) because of, (3) the inmate's protected First Amendment conduct, and that the action, (4) chilled the inmate's exercise of his First Amendment rights, and (5) did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567–68. To prevail against Defendants' motion for summary judgment, Bedard must demonstrate a triable issue of material fact on each element of his retaliation claim. *Brodheim*, 584 F.3d at 1269 n.3.

The record shows that Defendants Hanf and Adamson were not involved in the grievance process and were unaware of Bedard's grievances. (*See* ECF Nos. 35-7, 35-8.) While Defendant Aranas responded to Bedard's second level grievance, he declares that he "never threatened or counseled Mr. Bedard about using or abusing the grievance

process" and he "never recommended nor denied treatment." (ECF No. 35-6.) Bedard's claim that after he started filing grievances his requests for treatment were ignored is unfounded. The evidence in the record affirmatively demonstrates Bedard received treatment for his Hep-C. Bedard has alleged no facts to establish that being treated for his Hep-C through a different treatment method than he preferred, was an adverse action, nor that his First Amendment activity motivated Defendants response to his grievances or ultimate treatment for his Hep-C. *See Rhodes*, 408 F.3d at 567–68 (holding that for a retaliation claim to be viable, a prisoner must allege, inter alia, that a state actor took adverse action against him because of his protected conduct). As no reasonable jury could conclude that the Defendants engaged in adverse action because of he filed grievances, Defendants are entitled to summary judgment.

Based on the above, the Court recommends Defendants' motion for summary judgment be granted as to the retaliation claims.[3]

## IV.    CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 35), be granted.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

---

[3] The Court does not address Defendants' personal participation or qualified immunity arguments because the Court finds that Bedard's constitutional claims fail on the merits.

## V.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 35), be granted and judgment entered accordingly.

**DATED**: March 7, 2022         .

_____
**UNITED STATES MAGISTRATE JUDGE**